IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, | CV  19-114-BLG-TJC |
| Plaintiff, | **ORDER** |
| vs. | |
| LOLA HANSEN, | |
| Defendant. | |

Plaintiff Employers Mutual Casualty Company ("EMC") filed this action against Defendant Lola Hansen ("Hansen") seeking declaratory judgment as to its duty to defend and indemnify Hansen in relation to an underlying state court action.   (Doc. 1.)

Presently before the Court is Hansen's Motion to Stay or Alternatively Dismiss (Doc. 17), EMC's Motion for Judgment on the Pleadings (Doc. 23), and Hansen's Motion for Summary Judgment Re Duty to Defend (Doc. 30).  The motions are fully briefed and ripe for the Court's review.

## I.    BACKGROUND

Hansen resides in Montana, and is the mother of Raymond Hansen ("Raymond").  On August 23, 2016, Raymond shot and killed Terry Klein, Sr. in Richland County, Montana.  Thereafter, Hansen was named as defendant in a

1

lawsuit entitled *Jason Klein, as Personal Representative of the Estate of Terry Klein, Sr. v. Raymond Hansen, et al.*, Montana Seventh Judicial District Court, Richland County, Cause No. DV-18-32 (the "Underlying Action").  (Doc. 1-1.) The Underlying Action asserts a claim against Hansen for negligence.  (*Id.*  ¶¶ 15-17.)

The Underlying Complaint alleges in relevant part:

3.     Pursuant to his conviction in Case Number CR-07-69-BLG-JDS, Defendant Raymond Hansen was permanently subject to the following Special Condition of Supervision:

> The defendant shall be prohibited from owning, using, or being in constructive possession of firearms, ammunition, or other destructive devices while on supervision and any time after the completion of the period of supervision unless granted relief by the Secretary of Treasury.

16 Exhibit 2, p. 4.[1]

4.     Following February 27, 2008, Defendant Raymond Hansen was fully aware he was prohibited from owning, using, or being in constructive possession of firearms, ammunition, or other destructive devices.

5.     Following February 27, 2008, Lola Hansen, mother of Defendant Raymond Hansen, was fully aware Defendant Raymond Hansen was prohibited from owning, using, or being in constructive possession of firearms, ammunition, or other destructive devices.

6.     Prior to his release from the custody of the United States Bureau of Prisons, Lola Hansen took possession and responsibility of

---

[1] Raymond Hansen was never granted relief by the Secretary of Treasury.

Defendant Raymond Hansen's firearms, ammunition, and/or other destructive devices.

7.      On or around August 24, 2016, in direct violation of the foregoing Special Condition, of Supervision, Defendant Raymond Hansen took possession of a firearm(s), ammunition, and/or other destructive device(s).

8.      On August 24, 2016, Defendant Raymond Hansen did, without provocation, license, or defense, shoot and kill Terry Klein, Sr., in Richland County, State of Montana.

9.      Following August 24, 2016, Raymond Hansen informed law enforcement investigating the death of Terry Klein, Sr. that "after his [federal] conviction that prohibited him from possession guns, his father took possession of his firearms. He said he knew where the guns were located at his father's residence." Exhibit 3, p. 9.

10.     Also following August 24, 2016, a Ruger Model M77 .22-250 caliber rifle, serial number 71-04 761 was found by law enforcement at the residence of Defendant Raymond Hansen. *See,* Exhibit 4.

11.     Following Defendant Raymond Hansen's lifetime prohibition from owning, using, or being in constructive possession of firearms, ammunition, or other destructive devices and Lola Hansen's agreement to take possession and responsibility of Defendant Raymond Hansen's firearms, ammunition, and/ or other destructive devices, Defendant Raymond Hansen improperly gained access to firearms, ammunition, and/or other destructive devices and did, without provocation, license, or defense, shoot and kill Terry Klein, Sr., in Richland County, State of Montana.

. . .

16.     Lola Hansen negligently stored, handled, cared for, transported, entrusted, or failed to appreciate the danger posed by the firearm that was used in the death referred to in ¶ 1 and; therefore, breached duties of standard of care with respect to storage, care, transport, or entrustment of the firearm in that she knew, or should have known,

that Defendant Raymond Hansen, if allowed or had access to firearms, posed a threat to members of the community.

(Doc. 1-1.)

An Affidavit and Application for Permission to File an Information was attached to the Underlying Complaint, which set forth a statement of probable cause that Raymond had committed deliberate homicide in the killing of Klein.  (Doc. 1-1 at 17-27.)  The Affidavit stated that a recorded interview was conducted with Raymond, and he told investigators his father took possession of his firearms after his conviction that prohibited him from possessing guns.  (*Id.* at 25.)  The Affidavit further stated, "[h]e said he knew where the guns were located at his father's residence, but that he was unable to access the firearms."  (*Id.*)

At the time Raymond killed Klein, EMC insured Hansen and her husband, Arnold Hansen, under a Commercial and General Liability Policy ("CGL Policy") and Commercial Umbrella Policy ("Umbrella Policy").  The policies were issued to "Arnold and Lola Hansen DBA: Hansen Enterprises DBA: South 40 and Winners Pub located at 207 2nd Ave NW, Sidney, MT 59270-4015."  (Doc.1-2 at 7; 1-3 at 3.)

The CGL Policy defined an insured as:

SECTION II – WHO IS AN INSURED

1.    If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

(Doc. 1-2 at 19.)

The Umbrella Policy, likewise defined an insured as:

SECTION II – WHO IS AN INSURED

1.      Except for liability arising out of the ownership, maintenance or use of "covered autos":

    a.      If you are designated in the Declarations as:

        (1) An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

        (2) A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

(Doc. 1-3 at 19.)

Hansen tendered to EMC the defense and indemnification of the complaint in the Underlying Action. EMC agreed to defend pursuant to a reservation of rights. According to the parties, the Underlying Action remains pending.

On October 21, 2019, EMC filed this action seeking a declaration that no coverage exists under the Policies for the claim asserted against Hansen in the

5

Underlying Action.  EMC alleges coverage is dependent upon the incident being related to the conduct of Hansen's business.  EMC asserts the allegations in the Underlying Complaint bear no relationship to the conduct of Hansen's business. EMC, therefore, asks the Court to declare that it has no duty to defend or to indemnify Hansen.

Hansen has now moved to stay or dismiss this case pending resolution of the Underlying Action.  (Doc. 17.)  Alternatively, Hansen has moved for summary judgment on EMC's duty to defend, and EMC has moved for judgment on the pleadings on the duty to defend and the duty to indemnify.  (Docs. 23, 30.)

## II.    DISCUSSION

Hansen argues EMC's claim for declaratory judgment is not ripe because the Underlying Action is unresolved.  Therefore, she asks the Court to stay, or alternatively, dismiss this action.  EMC counters that the federal Declaratory Judgment Act does not support staying or dismissing this case.

The parties also dispute whether EMC has a duty to defend or indemnify Hansen.  EMC moves for judgment on the pleadings on the grounds that the allegations in the Underlying Complaint are clearly unrelated to the conduct of Hansen's business, and therefore, it has no duty to defend or indemnify her. Hansen, on the other hand, has moved for summary judgment.  Hansen asserts that because the allegations in the Underlying Complaint are vague and ambiguous,

6

EMC cannot unequivocally demonstrate that there is no possibility of coverage. Thus, Hansen argues, EMC is required to defend her in the Underlying Action. Hansen further argues the Policies violate the Montana Property and Casualty Insurance Policy Language Simplification Act, Mont. Code Ann. § 33-15-337(2) (the "Simplification Act"), which invalidates EMC's basis for denying coverage.

### A.    Legal Standards

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).  "'A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law.'" *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011), quoting *Dunlap v. Credit Prot. Ass'n, L.P.,* 419 F.3d 1011, 1012 n. 1 (9th Cir. 2005).  "As a result, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Seventh–Day Adventists Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  There are two exceptions to this rule. *Id.*  The Court

7

may consider "material which is properly submitted as part of the complaint," and "may take judicial notice of 'matters of public record.'"  *Id.* at 688-89.  Taking judicial notice does not convert a motion to dismiss into one for summary judgment.  *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.,* 547 F.3d 943, 955 (9th Cir. 2008).

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Id.* at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a motion for summary judgment, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Id.* at 587.

**B.    Duty to Defend**

The Court's jurisdiction over this action is based on diversity of citizenship. Thus, the Court must apply the substantive law of Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).  In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (2014).

It is well-settled in Montana that an insurer's duty to defend is independent from and broader than its duty to indemnify. *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004).  The "duty to defend arises when a complaint against an insured alleges facts, which if proved, would result in coverage." *Tidyman's Mgmt. Services, Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) citing *Staples*, 90 P.3d at 385 (Mont. 2004); *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 410-11 (Mont. 2013).  Whereas, the duty to indemnify "arises only if coverage under the policy is actually established." *Freyer*, 312 P.3d at 410-11.

The determination of whether an insurer has a duty to defend is made by comparing the factual allegations in the complaint to the coverage afforded under the policy.  *Graber v. State Farm Fire & Cas. Co.*, 797 P.2d 214, 217 (Mont. 1990); *Staples*, 90 P.3d at 385.  In comparing allegations of liability with policy language, "a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated."  *Staples*, 90 P.3d at 385.  The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, require coverage exclusions to be narrowly construed.  *Id.* Therefore, the insurer must "construe the factual assertions from the perspective of the insured."  *Id.*  "Where a claim falls unequivocally outside the policy's coverage, however, there is nothing for the court to construe, and no reason to impose a duty to defend."  *Twite Fam. P'ship v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1160 (Mont. 2008).

Accordingly, the insurer has a duty to defend unless there is an "unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage."  *Staples*, 90 P.3d at 385.  The Montana Supreme Court has addressed various duty to defend scenarios.  In *Revelation Industries*, the Court summarized its jurisprudence as follows:

> *Scenario (1)* the complaint clearly alleges facts that come within the coverage of the liability policy. This scenario requires the

insurer to defend its insured with no need to look beyond the allegations in the complaint. *(See e.g. Atcheson v. Safeco Insurance Company,* 165 Mont. 239, 527 P.2d 549 (1974));

Scenario (2) the complaint alleges facts that do *not* come within the coverage of the liability policy *and* the insurer has no knowledge of any other facts that could result in coverage. Under these circumstances, we have held that the insurer has no duty to defend its insured. (See *e.g. McAlear v. St. Paul Insurance Companies,* 158 Mont. 452, 493 P.2d 331 (1972)); and

Scenario (3) the complaint alleges facts that come within the coverage of the liability policy, but the insurer knows of other actual facts that *negate* coverage. This scenario relieves the insurer of its duty to defend. (See *e.g. Burns v. Underwriters Adjusting Co.,* 234 Mont. 508, 765 P.2d 712 (1988)).

*Revelation Indus., Inc.*, 206 P.3d at 923.

The Court went on to hold that where the complaint alleges no facts that would compel coverage under the policy, but the insurer has actual knowledge of facts that could result in coverage, the insurer has a duty to defend. *Id.* at 928. The Montana Supreme Court has also held that where there is a dispute as to the facts relevant to coverage, the dispute must be resolved in favor of finding a duty to defend. *Staples*, 90 P.3d at 385-86.

Here, EMC argues the allegations in the Underlying Complaint are not related to the conduct of Hansen's business, and therefore, it has no duty to defend her under the Policies. EMC initially construed the Underlying Complaint as alleging Hansen "was negligent in storing firearms at her residence or allowing access by Raymond Hansen to guns on the property where her residence is located." (Doc. 24 at 2.) EMC further asserted the Underlying Complaint alleged

11

"Raymond Hansen took possession of one or more firearms from Lola Hansen's personal residence or property." (*Id.*)

Contrary to EMC's argument, however, the Underlying Complaint does not actually specify that Hansen negligently stored the firearms *at her residence*, or that Raymond obtained the gun used in the killing *from Hansen's personal residence or property*. Rather, it only alleges in a broad manner that Hansen was negligent in storing them. (Doc. 1-1 at 5, ¶ 16.) Apparently recognizing this issue, EMC's subsequent briefing asserts "the underlying complaint in no way implicates Hansen's conduct of [her] business." (Doc. 35 at 4.) EMC points out the Underlying Complaint never alleges that Raymond was acting as an employee of Hansen's business when he killed Klein, that Hansen assumed responsibility for keeping certain firearms from Raymond in furtherance of the conduct of her business, or that Hansen's business conduct imposed a duty on her to keep firearms from her son. (*Id.* at 12.)

EMC's revised observation is correct. The Underlying Complaint is wholly silent as to the involvement of Hansen's business. There is nothing in the Underlying Complaint that remotely suggests Hansen's business is connected to the alleged conduct. Even assuming the Affidavit attached to the Underlying Complaint raises a factual dispute regarding whether Raymond could access

firearms at his parents' residence, the dispute does not involve or implicate Hansen's business.

In light of the Underlying Complaint's silence, Hansen essentially invites the Court to speculate that there might be facts that could show the underlying allegations were somehow connected to her business. But the Montana Supreme Court has made clear that an insurer's duty to defend is not triggered "by speculating about extrinsic facts and unpled claims regarding potential liability." *Fire Ins. Exch. v. Weitzel*, 371 P.3d 457, 463 (Mont. 2016). Rather, "[w]here the insurer has no knowledge of facts outside the complaint that may potentially trigger coverage, the complaint and the policy constitute the universe with regard to the insurer's duty to defend." *Id.* at 461. See also, *Lloyd A. Twite Family Partnership v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1158 (Mont. 2008) ("If the facts alleged in the complaint do not come within the policy's terms, then there is no duty to defend."); *Graber v. State Farm Fire and Cas. Co.,* 797 P.2d 214, 217 (Mont. 1990) ("The insurance company must look to the allegations of the complaint to determine if there is liability coverage," and "where the complaint alleges events not within the coverage of the policy . . . then the insurer has no duty to defend.").

Application of this principle is exemplified by the Montana Supreme Court's decision in *Farmers Union Mut. Ins. v. Rumph*, 170 P.3d 934, 927 (Mont. 2007).

13

In *Rumph*, a passenger who was injured in a one-vehicle rollover accident sued the driver (Alex), the driver's father (Nathan), and Nathan's businesses.  *Id.* at 936.  In an amended complaint, the passenger alleged Alex was too intoxicated to safely drive the pickup truck, and that he had previously rendered the seatbelts inoperable by installing two large speakers in the rear seat, thereby exacerbating the injuries. *Id.* at 936-37.

One of Nathan's businesses was an automobile repair garage that was insured under a Commercial Lines Garage Policy.  *Id.* at 937.  Because neither the complaint nor the amended complaint raised facts that implicated Nathan' auto repair business, the garage insurer denied coverage.  *Id.*

Subsequently, the insured's attorney discovered additional facts that he argued brought the accident under the Garage Policy.  *Id.*  The attorney asserted the seatbelts had been disabled in Nathan's garage, with Nathan's tools and materials.  The attorney also characterized Alex as an employee of the garage, and contended the pickup was a shop vehicle, used for garage-related errands.  *Id.* Thereafter, the garage insurer provided a defense under a reservation of rights and sought declaratory relief.  *Id.*  The district court ultimately granted summary judgment in favor of the insurer.  *Id.*

On appeal, the insureds argued the amended complaint, when considered "together with" or "coupled with" the additional facts the insured's counsel had

14

uncovered, established that the accident was covered under the garage policy because it arose from "garage operations." *Id.* at 938. The Montana Supreme Court rejected the argument. The Court noted the amended complaint made no reference to Nathan's garage, the fact Alex allegedly disabled the seatbelts in the garage with the garage's tools, that Alex was Nathan's employee, or that the pickup was used as a shop vehicle. *Id.* The Court explained that the insurer was only required to look at the allegations in the amended complaint to determine if coverage existed. *Id.* Therefore, the Court stated it was "irrelevant that the amended complaint 'together with' additional facts may have triggered coverage under the garage liability policy." *Id.* The Court concluded that:

> Based on the facts alleged in the Nielson's amended complaint, [the insurer] correctly determined that the accident was outside the garage coverage, as no reference was made to anything remotely 'necessary or incidental to a garage business.' In other words, there was an 'unequivocal demonstration' that the Neilsens' claim was not covered by Nathan Rumph's Commercial Lines Garage Policy."

*Id.*

Likewise, here, the Underlying Complaint does not reference anything remotely related to the conduct of Hansen's business. Accordingly, just as in *Rumph*, EMC has unequivocally demonstrated that the complaint against Hansen does not fall within the policy's coverage.

Nevertheless, Hansen argues that an insurer cannot ignore knowledge of facts which may give rise to coverage simply because those facts are not alleged in

a complaint.  (Doc. 32 at 7.)  Therefore, Hansen submits that EMC is charged with knowledge of facts beyond the pleadings, including those set forth in Hansen's Statement of Undisputed Facts.  *Id.*  In reviewing the Statement of Facts, however, Hansen's business is mentioned in only two instances, and neither reference alleges or implies that Hansen took possession of Raymond's firearms in furtherance of the conduct of her business.  (See Doc. 31.)

First, Hansen states that Raymond was an "occasional employee" of Hansen's business and conducted maintenance work on an as needed basis.  (Doc. 31 at ¶ 2.)  Hansen's testimony actually states that Raymond had not worked for the Hansens for several months prior to the shooting of Terry Klein in August 2016.  (Doc. 37 at ¶ 16.)  But even if he had been so employed, Hansen has offered no theory under which this fact could potentially bring the underlying claim within the coverage of the policies.  The fact that Raymond occasionally did maintenance work at Hansen's business does not render the storage of Raymond's firearms within the conduct of her business.  There is no indication Raymond was acting as an employee at the time of the shooting, or that Hansen in any way assumed responsibility for the firearms in furtherance of the conduct of her business.

Second, Hansen states that she cleared the firearms and ammunition out of Raymond's residence "perhaps with the assistance of an employee of" her business.  (Doc. 31 at ¶ 3.)  Again, Hansen actually testified that she was uncertain

16

who assisted her with the task, stating: "I'm guessing – no, I'm not supposed to guess.  I would have to speculate, because it could have been an employee from the South 40 and I don't recall."  (Doc. 31-2 at 2.)  To survive summary judgment, a party must set forth "non-speculative evidence of specific facts."  *Homesite Insurance Co. of the Midwest v. Frost*, 2020 WL 5369847 at *2 (D. Mont. Sept. 8, 2020) (quoting *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011).  Hansen's testimony that she does not recall who may have assisted her in removing the guns, but that it could have been an employee of her business, is entirely speculation and conjecture.  But even if true, the fact that an employee may have assisted in the removal of the firearms does not make such removal or storage related to, or in furtherance of, the conduct of Hansen's business.

This case, therefore, falls squarely within the second scenario described above in *Revelation Industries*; "the complaint alleges facts that do *not* come within the coverage of the liability policy *and* the insurer has no knowledge of any other facts that could result in coverage."  *Revelation Indus., Inc.*, 206 P.3d at 923.  As a result, EMC has no duty to defend.  *Id.*

## C.    Duty to Indemnify

Having determined EMC has no duty to defend, the Court likewise finds EMC has no duty to indemnify.  Generally, "courts must caution against

determining questions of indemnity until liability is established in the underlying proceeding." *Am. Reliable Ins. Co. v. Vlieland*, 2018 WL 1582551, *3 (D. Mont. March 30, 2018).  Typically, a claim for declaratory judgment regarding an insurer's duty to indemnify is not ripe until there has been a resolution of the underlying claim.  *Id.* at *3 (finding insurer's motion for summary judgment was "not ripe and justiciable regarding its duty to indemnify" because the underlying state court matter was unresolved); *Nat'l Surety Corp. v. Mack*, 2016 WL 590453, *2 (D. Mont. Feb. 11, 2016) ("Courts must refrain from deciding questions of indemnity until liability is established in the underlying proceeding."); *Yellowstone Dev., LLC v. United Fire & Cas. Co.*, 2011 WL 13077970, *2 (D. Mont. Aug. 11, 2011) (finding claim for declaratory judgment concerning insurer's duty to indemnify was not ripe where the underlying claim remained pending); *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 363 (Mont. 2005).

Nevertheless, because the duty to defend is more extensive than the duty to indemnify, resolution of the issue of the duty to defend can also determine the indemnity issue.  The Montana Supreme Court has noted that "[w]here there is no duty to defend, it follows that there can be no duty to indemnify." *Skinner*, 127 P.3d at 364.  Thus, "a finding that there is no duty to defend necessarily compels the finding that there is no duty to indemnify." *Mack*, 2016 WL 590453 at *2.

18

The Montana Supreme Court recently reaffirmed this rule in *Farmers Ins. Exch. v. Wessel*, 477 P.3d 1101, 1106-07 (Mont. 2020). There, the district court had found the insurer had no duty to defend, but stated the duty to indemnify was not ripe because liability had not yet been determined in the underlying action. *Id.* at 1106. The Supreme Court reversed, stating that "[a] conclusion that there is no duty to defend compels the conclusion that there is no duty to indemnify." *Id.* at 1107. Accordingly, because EMC has no duty to defend, EMC likewise has no duty to indemnify.

The Court therefore declines Hansen's motion to stay this case pending disposition of the Underlying Action.[2]

---

[2]     Hansen argues the Court should stay or dismiss this case under the *Brillhart/Wilton* doctrine. (Doc. 17.) EMC brought this action under the Declaratory Judgment Act (the "Act"), which provides that federal courts "*may* declare the rights and other legal relations of any interested party" in a declaratory judgment action. 28 U.S.C. § 2201(a) (emphasis added). In light of the Act's permissive language, district courts have discretion to dismiss declaratory judgment actions when "the questions in controversy...can better be settled in" a pending state court proceeding, *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942), or if a state court proceeding presents an "opportunity for ventilation of the same state law issues." *Wilton v. Seen Falls Co.*, 515 U.S. 277, 290 (1995). Courts consider three factors when deciding whether to abstain from hearing a declaratory judgment action: (1) avoiding "needless determination of state law issues," (2) discouraging "forum shopping," and (3) avoiding "duplicative litigation." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). There is a presumption in favor of dismissal if the federal and state cases involve the same issues and parties. *Id.* But, "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id.*

Here, the Court finds the *Brillhart* factors do not discourage the exercise of jurisdiction in this case. First, "[t]he Ninth Circuit instructs that where a federal

19

**D.    The Simplification Act**

Hansen also argues the Policies violate Mont. Code Ann. § 33-15-337(2) because they failed to include a "notice section of important provisions" and the Umbrella Policy also failed to "include a table of contents."  (Doc. 32 at 14.) Citing the Montana Supreme Court's decision in *Montana Petroleum Tank Release Compensation Board v. Crumley's, Inc.*, 174 P.3d 948 (Mont. 2008), Hansen argues EMC's failure to comply with the Simplification Act renders EMC's policy defenses ineffective.  Hansen contends, therefore, that the Court should refuse to enforce the language defining "who is an insured" under the policies, and find EMC has a duty to defend.  Specifically, Hansen is requesting the Court disregard the definitional phrase "but only with respect to the conduct of a business of which you are the sole owner" or "but only with respect to the conduct of your business." The Court declines to do so.

---

court is deciding an issue of insurance coverage or another 'routine issue of state law,' it is a 'rare circumstance' where a court should decline jurisdiction because state law supplied the law governing the decision."  *Mid-Century Ins. Co. v. Rick's Auto Body, Inc.*, 2017 WL 4896105, *3 (D. Mont. Oct. 30, 2017).  Second, there is no particular evidence that EMC's decision to file this action in federal court was an act of forum shopping.  Finally, EMC is not a party to the Underlying Action, and there is no parallel state declaratory judgment action pending.  As a result, the Court finds it is appropriate to retain jurisdiction over this action under the Declaratory Judgment Act.

First, the Simplification Act expressly provides that it is "not intended to increase the risk assumed under policies subject to [the Act]."  Mont. Code Ann. § 33-15-334(2).  Application of the Act as requested by Hansen would do exactly that – it would rewrite the insurance contract to increase the scope of the risk EMC assumed beyond the conduct of Hansen's business.

Second, this case is substantially different from the Montana Supreme Court's *Crumley's* decision.  *Crumley's* involved an action to recover the costs of cleanup and corrective action for a leak from an underground diesel fuel tank. *Crumley's*, 174 P.3d at 953-54.  The owner of the tank maintained commercial liability coverage, which included an extension of coverage for pollutants.  *Id.* at 954.  But the coverage extension contained a notice provision which required the insured to report any damage or loss to the insurer within 120 hours of the occurrence or loss.  *Id.*  The insurer ultimately denied coverage, citing the owner's failure to give timely notice under the 120-hour notice requirement.  *Id.*, 959.

The Montana Supreme Court determined that the policy violated § 33-15-337(2) of the Simplification Act, which requires that a policy "include a table of contents and notice section of important provisions."  *Id.* at 959.   The Supreme Court found that the insurer's failure to highlight the 120-hour notice provision in a table of contents or notice section was a violation of the Act and, accordingly, held

21

the notice provision was void and unenforceable because it was contrary to statute. *Id.* at 960.

The Court's decision in *Crumley's* did not elaborate further on what provisions are sufficiently "important" to require mention in a table of contents or notice provision. Certainly, any number of provisions in an insurance contract may ultimately prove to be important, depending on the circumstances and nature of the claim. Clearly, a provision in an insurance contract requiring strict compliance with a very short notice period to avoid the termination of all coverage under the policy is such an important provision. The same is not true here.

The provisions defining "who is an insured" are not extensions of coverage or endorsements excluding coverage, and they did not require any action by Hansen to implement or maintain coverage. As such, the *Crumley's* decision does not compel the conclusion that EMC's failure to highlight the definition of "who is an insured" in a separate notice section constitutes a violation of the Act. Additionally, although the Umbrella Policy lacks a table of contents, the Court does not read *Crumley's* to mean the general absence of a table of contents warrants rewriting the policy to include risks that are clearly beyond its intended scope.

Hansen's motion for summary judgment with respect to the Simplification Act is, therefore, denied.

22

### III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** as follows:

1.      Hansen's Motion to Stay or Alternatively Dismiss (Doc. 17) is

**DENIED**.

2.      EMC's Motion for Judgment on the Pleadings (Doc. 23) is

**GRANTED**;

3.      Hansen's Motion for Summary Judgment Re Duty to Defend (Doc.

30) is **DENIED**.

DATED this 15th day of March, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

23